UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTOINETTE BELL

VERSUS

CSD COLLECTION SPECIALIST
A/K/A E. A. UFFMAN &
ASSOCIATES, INC.

CIVIL ACTION

NO. 11-280-BAJ-DLD

**RULING AND ORDER**

This matter is before the Court pursuant to a Motion for Summary Judgment filed by Defendant, E. A. Uffman & Associates, Inc. d/b/a CSD Collection Specialist ("CSD" or "Defendant CSD") (doc. 17). Plaintiff, Antoinette Bell ("Plaintiff"), opposes Defendant's motion (doc. 24). This suit is brought under the provisions of 28 U.S.C. § 1331.

**BACKGROUND**

I.   **Uncontested Facts**

Pursuant to LR 56.1, Defendant has submitted a statement of undisputed material facts (doc. 17-1). Plaintiff, however, has contested some of those facts, as permitted under LR 56.2 (doc. 24-1). Therefore, pursuant to LR 56.2, certain material facts will be deemed admitted for purposes of this motion.[1]

---

[1]   LR 56.2 provides:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be

The uncontested facts are as follows:

- Both parties concede that Defendant has been attempting to collect a debt from Plaintiff stemming from medical treatment with Anesthesiology Group Associates, Inc. and Defendant's collection attempts have included placing telephone calls and correspondence by letter mail (doc. 24-1 ¶¶ 1-2).

- Plaintiff asserts that on March 9, 2011, she sent a letter to Defendant requesting validation of the debt on her credit report. Plaintiff further states that the letter reflected her desire to no longer be contacted by telephone and only to be contacted by written letter (doc. 24-1 ¶ 3).

- Defendant avers that it received two letters from Plaintiff on March 16, 2011. In addition to the first letter requesting validation of the debt and asking to no longer be contacted via telephone, a second letter from Plaintiff requested that Defendant contact Plaintiff "as soon as possible" to discuss negative marks on her credit report. This letter provided Defendant with Plaintiff's cellular telephone number to be used when contacting her (doc. 17-2 ¶ 4; doc.17-3 at 15-16).

- Defendant asserts that this is the first occasion in which Defendant possessed Plaintiff's cellular telephone number[2] (doc. 17-2 ¶ 6).

- Both parties concede that Defendant responded to Plaintiff's request for debt validation by sending a letter stating that it would have to verify Plaintiff's identity in order to comply with the request. Defendant asserts that this requirement is in accordance with the Federal Trade Commission's "Red Flag Rules" (doc. 17-2 ¶¶ 6-9).

---

deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[2] Defendant concedes that prior to Plaintiff providing her cellular telephone number, Defendant attempted to contact Plaintiff regarding her debts in April 2006, October 2006, April 2007, June 2007, and February 2008 (doc. 17-1, at 3 n.1; Def.'s Ex. A, at 2, 7). Defendant avers that when its efforts to contact Plaintiff were unsuccessful as of February 2008, Defendant's records reflect that it closed the accounts (doc. 17-1, at 3). Its records further reveal that once the accounts were closed in 2008, "there was no activity on the accounts or calls made until Plaintiff contacted CSD in March 2011 and provided CSD with her telephone number and requested that CSD contact her" (doc. 17-1, at 3 n.1; Def.'s Ex. A).

2

- Both parties agree that Plaintiff never responded to Defendant's letter seeking to confirm Plaintiff's identity (doc. 17-2 ¶ 8; doc. 17-3, at 43).

- According to Defendant, Plaintiff's phone records and Defendant's business and telephone records reveal that a total of five calls were subsequently made by Defendant to Plaintiff's cellular telephone between March 16, 2011 and March 28, 2011 (doc. 17-2 ¶ 30).

- Both parties agree that the first of these phone calls was placed to Plaintiff's cellular telephone on March 16, 2011 on or about 11:40 A.M. (doc. 17-2 ¶ 13; doc. 17-3, at 46).

- The parties agree that during the conversation between Defendant and Plaintiff on March 16, 2011, Defendant's collection specialist informed Plaintiff of her rights under the Fair Debt Collection Practices Act (FDCPA) and informed her that CSD was attempting to collect on a debt owed by Plaintiff which is now owned by CSD (doc. 15-2 ¶).

- The parties agree that on March 16, 2011 Plaintiff informed Defendant's collection specialist that she would call back later in the week regarding payment in full of the accounts. Both parties further agree that Plaintiff did not call back (doc. 17-2 ¶¶ 14-15).

- According to Defendant, Defendant's collection specialist next called Plaintiff on her cellular phone on Monday, March 21, 2011 around 10:30 A.M. Defendant asserts that Plaintiff indicated, once again, that she would call Defendant's collection specialist back (doc. 17-2 ¶ 17).

- According to Defendant, on Wednesday, March 23, 2011, Defendant's collection specialist once again contacted Plaintiff on her cellular phone at 11:00 A.M. According to Defendant, Plaintiff stated that she wanted to take care of the debt and she requested that Defendant's collection specialist call her back before the end of the day (doc. 17-2 ¶ 23).

- According to Defendant, Defendant's collection specialist called Plaintiff again on her cellular phone on Wednesday, March 23, 2011 before the end of the day at 3:55 PM. Defendant asserts that

3

>   Plaintiff once stated that she would call Defendant's collection specialist back (doc. 17-2 ¶¶ 24-25).
>
> - According to Defendant, Defendant's collection specialist next called Plaintiff on her cellular phone on Monday, March 28, 2011 at or around 4:00 PM. Defendant asserts that Plaintiff once again stated that she would call Defendant's collection specialist back (doc. 17-2 ¶¶ 24-25).
>
> - Both parties agree that Defendant always called Plaintiff on her cellular telephone and that Plaintiff, on occasions, asked that Defendant call her back (doc. 17-2 ¶¶ 30–32; doc. 24-1 ¶ 18).
>
> - The telephone records supplied by both parties indicate that Defendant called Plaintiff two times in one day on March 23, 2011 and all other phone calls were spaced out over the thirteen day period from March 16, 2011 to March 28, 2011 (doc. 17-2 ¶¶ 33–34).

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).

The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075

(5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

## I.  FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) CLAIM

Subsection 1692c(a)(1) of the Fair Debt Collection Practices Act (FDCPA) prohibits a debt collector from communicating with a debtor:

> "at any unusual time or place or at a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock post meridian, local time at the consumer's location." 15 U.S.C.A. § 1692c (West 2011).

Similarly, Subsection 1692c(a)(3) prohibits a debt collector from calling a debtor "at the consumer's place of business if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." *Id.*

Further, under 15 U.S.C.A. § 1692g, a debt collector is to cease its collection efforts of a consumer's debt after receiving a valid request for validation and until the debt collector validates the debt. Finally, the FDCPA provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.A. § 1692d. Subsection 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any

5

person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

Here, from the pleadings and documentation provided by both parties in the record, it is clear that Defendant's five calls to Plaintiff on four days over a thirteen day period, even viewed in the light most favorable to Plaintiff, do not raise a genuine issue of material fact regarding whether Defendant violated the FDCPA in contacting Plaintiff. The Court concludes this for several reasons.

First, the facts alleged do not show that Defendant placed these calls to Plaintiff with the intent to harass, annoy or abuse Plaintiff. Rather, the calls appear to be an attempt to contact Plaintiff to discuss her debt. This conclusion is further corroborated by the fact that Plaintiff requested, in writing, that Defendant contact her "as soon as possible" and provided her cellular telephone number (doc. 17-2 ¶ 4; doc.17-3 at 15-16). Additionally, Plaintiff concedes that she told Defendant's collection representative that she wanted to take care of her debt and, on occasions, asked that Defendant call her back (doc. 24-1 17, 21).

Second, Plaintiff has not alleged facts sufficient to show that: 1) Defendant knew or should have known the statutorily approved time period of 8:00 A.M. to 9:00 P.M. was inconvenient to Plaintiff; or 2) Defendant communicated with Plaintiff at times and/or places known to be inconvenient in violation of 15 U.S.C. § 1692c(a)(1). Mainly, Plaintiff's request that Defendant call her back "after hours" does not directly indicate a time convenient to Plaintiff. "After hours" could mean a time outside of the statutorily approved time period of 8:00 A.M. to 9:00

6

P.M. Further, the statement that Plaintiff could not talk because "she was at work" does not put Defendant on notice of an inconvenient time and place. Plaintiff's request that Defendant "call her back" bolstered with her letter requesting that Defendant contact her "as soon as possible" could lead to the conclusion that Plaintiff wished to talk at the same location but not at that precise moment.[3]

Third, it is unclear that Defendant should have ceased its collection efforts with Plaintiff after receiving the letter requesting validation of her debt. Both parties concede that: 1) Defendant CSD, on the same day it received the letter requesting validation of the debt, also received a letter requesting that Defendant contact Plaintiff "as soon as possible;" and (2) Plaintiff never responded to Defendant's request for verification of identification in compliance with the FTC's "Red Flag Rules" which Defendant sent to Plaintiff immediately upon receipt of the request for validation.

Accordingly, because Plaintiff has not presented evidence that raises an issue of material fact in support of her claims asserted under Sections 1692c, 1692d, and 1692g, summary judgment in favor of Defendant CSD on these claims is warranted, and the claims must be dismissed.

---

[3] The Court also notes that all calls were made to Plaintiff's cellular telephone number and not a telephone number registered to a place of business. Defendant would be unable to know with certainty that Plaintiff was at her place of employment before making the initial call on March 16, 2011.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 17) is **GRANTED**. The Court **DENIES** Plaintiff's Motion for Leave to File Sur-Response to Defendant's Motion for Summary Judgment (doc. 30) for the factual and legal conclusions set forth in this ruling.[4]

Baton Rouge, Louisiana, January 25, 2013.

*[signature]*

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[4] The Court is not persuaded by Plaintiff's assertion that "new evidence and arguments" presented in Defendant's Reply to Plaintiff's Opposition (doc. 29) allows Plaintiff the right to file a sur-response. Moreover, the Court did not rely upon any of the purported "new evidence and arguments" Plaintiff alleges is in Defendant's Reply in issuing this ruling.